UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BEARD, THEO DOWNS as
Next Friend of PEGGY SHUMAY,
EDWARD GARIEPY as Next Friend
of ALYSSA CHAPPA, TAMARA BLEAU
as Next Friend of ROBERT COOK,
RONALD FORD SR., as Next Friend
of RONALD FORD JR., and NANCY
HUSKINSON, AS Next Friend of
STACY HUSKINSON,

    Plaintiffs,

v.

WHITMORE LAKE SCHOOL DISTRICT,
CHARMAINE BALSILLIE, BRIAN
CARPENTER, JAY MUNZ, WENDY
LEMONS, SUE LANGEN, NORTHFIELD
TOWNSHIP POLICE DEPARTMENT, OFC.
R. MAYRAND and OFC. M. JENSEN,

    Defendants.
_____/

FILE
JUN 2 0 2003
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

No. 00-CV-73657-DT

HON. GEORGE E. WOODS

**ORDER GRANTING DEFENDANT WHITMORE LAKE
SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT**

This matter having come before the Court on Defendant Whitmore Lake School District's ("WLSD") Motion for Summary Judgment [Document No. 30];

The Court having reviewed the pleadings and being otherwise fully informed in the matter;

IT IS HEREBY ORDERED that Defendant's motion shall be, and hereby is, GRANTED in accordance with the opinion that follows.

I.  INTRODUCTION AND FACTS

According to the Complaint, in the spring of 2000, Plaintiffs, who were students at Whitmore Lake High School, were strip searched after a student reported money was missing from her purse. Plaintiffs filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the Whitmore Lake School District's policy violated the constitutional rights of the students.

The policy reads in relevant part as follows:

> The Board recognizes that the privacy of students or his/her belongings may not be violated by unreasonable search and seizure and directs that no student be searched without reasonable suspicion or in an unreasonable manner. The extent of the search will be governed by the seriousness of the alleged infraction, the student's age, and the student's disciplinary history.
>
> \*\*\*
>
> Search of a student's person or intimate personal belongings shall be conducted by a person of the student's gender, in the presence of another staff member of the same gender, and only in exceptional circumstances when the health or safety of the student or of others is immediately threatened.

Plaintiffs' Ex. 4 at 1, 2. The policy also advises that a request for a search be directed to the principal. Id. at p. 2.

2

Under the guidelines issued by the school superintendent, the principal can search a student's pockets, purse or pat down a student, id. at p. 4. However, "strip searches are to be conducted only by law enforcement personnel." Id. at 4.

Defendants filed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c), asserting that the student search policy is constitutional and that WLSD cannot be held liable for the actions of its employees.

## II. STANDARD

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. In order to avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. Anderson, supra. The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of

his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the non-moving party, but may weigh competing inferences for their persuasiveness. Matsushita, supra.

III. DISCUSSION

> Section 1983 provides, in pertinent part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or caused to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Without question, WLSD is a "person" for purposes of § 1983. See Monell v. Department of Soc. Servs., 436 U.S. 658, 696 (1978)(noting that there is no basis to distinguish between a school board and a municipality because "each is an instrumentality of state administration"). Nevertheless, WLSD is not "liable for every misdeed of its employees and agents." Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Accord City of Canton v. Harris, 489 U.S. 378, 385 (1989)(municipal liability can be found only when "the municipality itself causes the constitutional violation at issue"). In sum, the means by which Plaintiffs can hold WLSD liable include proving the existence of an express policy that when enforced caused the constitutional deprivation, proving the existence of a practice or custom of such unconstitutional conduct or proving that the person with final policy making authority caused the constitutional injury.

In this case, there is no contention that the policy as written caused the injury or that the person with final policymaking authority caused the injury. Instead, Plaintiffs argue that WLSD's failure to train teachers resulted in a de facto custom of unconstitutional searches.

To succeed on this theory, a plaintiff "must prove that the training program is inadequate to the task an [employee] must perform; that the inadequacy is the result of deliberative indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994)(quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989)). The Supreme Court elaborated on an inadequate training claim in Board of the County

Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997). The Court observed:

> We concluded in Canton that an inadequate training claim could be the basis for 1983 liability in limited circumstances. We spoke, however, of a deficient training program, necessarily intended to apply over time to multiple employees. Existence of a program makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequence of their action--the deliberate indifference--necessary to trigger municipal liability.

Id. at 407. (Internal citations and punctuation omitted). In short, "[a] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997); Brown v. Shaner, 172 F.3d 927, 930 (6th Cir. 1999)(same).

Deliberate difference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Stemler, 126 F.3d at 865. "A showing of simple or even heightened negligence will not suffice." Id. (citations omitted).

6

A.  Prior unconstitutional actions

Plaintiffs rely on a letter sent by the Whitmore Lake High School principal, Dr. Nelson, following a search of the sixth hour gym class on January 6, 2000, as evidence that the situation giving rise to this incident occurred previously and that Defendant failed to respond.  According to Plaintiffs, an informal custom of searches conducted in the absence of individualized suspicion existed.  The letter reads:

> On Thursday, January 6, 2000, an incident occurred sixth hour during your student's physical education class which received the attention of both the teacher and myself [sic].  This letter is offered to inform you of the incident, the procedure that was employed and the fact that an investigation is ongoing.  At the end of the class period when students were changing clothes, a wallet containing pictures and a considerable amount of money was reported missing.  The class had not yet been dismissed and it was deemed timely by the teacher to do an immediate search in order to obtain the missing wallet.
>
> All student backpacks and pockets were searched prior to students leaving the gymnasium, and I would like to commend the students for their cooperation and patience. Many students indicated their support of the search because of the violation of the student's personal property, and the fact that as a student body there is no tolerance for theft.  The teacher was able to recover the wallet intact and an investigation is now underway with definite consequences to follow.

> It is encouraging to know that we are united
> in our efforts to maintain a safe and orderly
> environment for all students and staff.[1]

Plaintiffs' Ex. 5.

During her deposition, Dr. Nelson acknowledged that she could not recall having individual suspicion as to each of the students searched on January 6, 2000. Plaintiffs' Ex. 3, Dep. of Nelson at 105-06. She testified that to the best of her recollection she reported the search to the Superintendent. Id. Plaintiffs assert that the Superintendent then was put on notice that students were being searched even when individualized suspicion did not exist, but failed to take action. Plaintiffs note that during the same time frame, Dr. Nelson authorized canine searches without individualized suspicion. See Plaintiffs' Ex. 7, January 2000 Newsletter to parents.

The letter fails as a matter of law to support Plaintiffs' theory that the Board's guidelines were being eschewed in favor of local custom. A search of student backpacks, lockers, and pockets in the absence of individualized suspicion does not raise the same concern for protection of constitutional rights as the strip search at issue in this lawsuit. As noted by the Supreme Court in New Jersey v. T.L.O., 469 U.S. 325, 342 n.8 (1985),

---

[1] The Court finds Plaintiffs' claim that Dr. Nelson ratified unconstitutional group searches when she wrote that students and staff were "united" in their "efforts to maintain a safe and orderly environment" is not a viable reading of the letter.

8

exceptions to the individualized suspicion requirement are "generally appropriate only where the privacy interests implicated by a search are minimal and where other safeguards are available to assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field." Moreover, this Court finds that the letter falls short of creating even a scintilla of evidence of deliberate indifference. First, Plaintiffs have not established that either the January 2000 search or any canine search violated the Constitution. Deliberate indifference requires proof not only that the prior searches were unconstitutional but also that Defendant failed to respond.

### B. Inadequate training

Plaintiffs present the deposition testimony of Jay Munz to support their position that because teachers were not given any training whatsoever as to the constitutional limits on their ability to search, Defendant was deliberately indifferent. Munz testified that he was not trained as to the WLSD's policy regarding searches of students and their belongings when he was hired or at any subsequent in-service training. Plaintiffs' Ex. 1 at 7-8. The superintendent agreed that WLSD did not make formal training available. Plaintiffs' Ex. 2 at 24-27. Finally,

Munz stated that had he been trained about the policy he would not have performed the search. Plaintiffs' Ex. 1 at 29-30.

This testimony fails as a matter of law to create a genuine issue of material fact. In analyzing the issue of WLSD's liability, "the focus must be on adequacy of the training program in relation to the tasks the particular [employee] must perform." City of Canton, 489 U.S. at 390. Moreover, it is not enough that a particular employee was trained unsatisfactorily to attach liability to WLSD, "for the employee's shortcomings may have resulted from factors other than a faulty training program," and "[i]t may be . . . that an otherwise sound program has occasionally been negligently administered." Id.

Here, under the policy, the administrator or principal is responsible for the implementation of a search of a student. Therefore, the administrator or principal rather than the teachers is responsible for knowing the board policies with respect to searches. In the search at issue here, the principal was not available. However, there is no evidence before this Court as to the number of times the principal is unavailable thereby creating an inference that training on the search policy needed to be presented to teachers generally. Only where WLSD's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its students can such a shortcoming be properly thought of as WLSD "policy or custom"

10

that is actionable under § 1983. <u>City of Canton</u>, at 388-89 (citations omitted).

In addition, the Court notes that there is undisputed testimony that teachers were given copies of the school policy regarding searches, and the policy was available in the library, principal's office, and superintendent's office. Defendants' Ex. 2, Dep. of Nelson at 60.

In sum, the facts of this case do not, as a matter of law, create even an inference that Defendant's deliberate indifference caused Plaintiffs' constitutional injury.

### C. Scale of investigation

In the alternative, Plaintiffs argue that the custom can be proven here because of the scale of the investigation. In <u>Lavoie v. Town of Hudson</u>, 740 F.Supp. 88, 92-93 (D.N.H. 1990), the court observed,

> An exception to the general rule that one needs to allege more than a single event to establish municipal custom may exist 'where other evidence of the policy has been presented and the single incident in question involves the concerted action of a large contingent of individual municipal employees, the event itself provides some proof of the existence of the underlying policy or custom.'

Under this theory, Plaintiffs maintain that the involvement of at least five high school teachers in the May 24, 2000,

searches and the number of students who were strip searched
satisfy their reliance on the exception to the general rule.
Therefore, Plaintiffs conclude, the search itself creates an
independent basis for finding liability.

The Court is not persuaded. The case upon which Plaintiffs
rely is distinguishable. In Lavoie, the district court reached
its decision on vastly different facts. In that case, the police
chief, considered a policymaker, was involved in the conduct
giving rise to the claim--the execution of a search warrant and
the meeting in which the plan for execution was devised.
Moreover, the case involved not only the chief of police but four
officers "who acted in concert under a shared set of rules which
provided evidence that there was a pre-existing practice of
nighttime raids, battering down doors without first knocking and
announcing their identity for the purpose of entering a private
home in the middle of the night absent exigent circumstances."
Id. at 92.

In contrast, here there is no evidence to support an
inference that the teachers involved met with a policy maker and
devised a strategy to strip search the students. The number of
students who were searched merely reflects the number of students
with access to the money. Most of the teachers were not involved
in the strip search of the students. This is not the type of

12

situation wherein the strip search itself creates an inference of a policy.

IV. CONCLUSION

Accordingly, Defendant's motion for summary judgment shall be, and hereby is, GRANTED.

IT IS SO ORDERED.

_____
GEORGE E. WOODS
UNITED STATES DISTRICT JUDGE

Dated: June 20, 2003
Detroit, Michigan


Copies mailed this date to:

Richard A. Soble, Esq.
Michael J. Steinberg, Esq./Kary L. Moss, Esq.
Scott S. Yaldo, Esq.
Timothy J. Mullins, Esq.
G. Gus Morris, Esq.