NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

00-73657

No. 06-1452

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
JUN 19 2007
LEONARD GREEN, Clerk

DAVID BEARD et al.,

Plaintiffs-Appellants,

v.

WHITMORE LAKE SCHOOL DISTRICT et al.,

Defendants-Appellees.

FILED
JUN 21 2007
CLERK'S OFFICE
DETROIT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

A TRUE COPY.
Attest:
LEONARD GREEN, Clerk
By_____
Deputy Clerk

Before: ROGERS, COOK, Circuit Judges; O'MALLEY, District Judge.[*]

ROGERS, Circuit Judge: This case concerning the unconstitutional strip search on May 24, 2000, of 24 students in the Whitmore Lake High School District reaches this court for the second time. *See Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 601 (6th Cir. 2005). In the first appeal, this court found that qualified immunity protected the school teachers who engaged in the illegal search. *Id.* This appeal, in contrast, concerns the liability of the District for the conduct of the teachers. Because the district court correctly found that the District was not deliberately indifferent to the risk that its teachers would engage in unconstitutional searches and the District did not have a custom of tolerating unconstitutional searches, we affirm the district court's dismissal of the students' complaint against the District.

---

[*]The Honorable Kathleen M. O'Malley, United States District Court Judge for the Northern District of Ohio, sitting by designation.

*No. 06-1452*
*Beard v. Whitmore Lake School*

## BACKGROUND

In 2000, David Beard, Peggy Shumway, Alyssa Chappa, Stacy Huskinson, Robert Cook, Ronald Ford, Jr., Michael Baier and Kevin Saunders were students between the ages of fifteen and eighteen at Whitmore Lake High School. On May 24, 2000, while these and other students were in the school gymnasium for a coeducational gym class, London Griffin, a female student, reported to Whitmore Lake High School gym teacher Brian Carpenter that a few hundred dollars from her purse was missing. *See id.* at 601. Carpenter ordered the students to remain in the gymnasium and asked Huskinson to find Acting Principal Charmaine Balsillie. (Principal Nelson was absent.) When Acting Principal Balsillie arrived at the gym and learned about the allegations of theft, she ordered Carpenter to search all the students and asked teachers Jay Munz, Wendy Lemons, and Sue Langen to assist. She also contacted the police.

Record evidence shows that, when students objected to the search, Carpenter told them to "shut up" and explained that the students had no choice but to participate in the strip searches. JA 516. Munz required the male students to drop their underwear to their ankles one at a time in the shower room. Carpenter, meanwhile, searched lockers, clothing, and other areas of the gymnasium. "Balsillie and Langen took the female students into the girls' locker room where the girls pulled up their skirts and pulled down their pants while standing in a circle." *Beard*, 402 F.3d at 602. Shortly thereafter, the police arrived and searched the area, but not the students. Balsillie learned that the search of the students did not recover the missing money and spoke with the police. She then decided that the investigation would not solve the alleged crime and she dismissed the students.

No. 06-1452
*Beard v. Whitmore Lake School*

Record evidence demonstrates that the District had policies in place governing the search and seizure of students. Specifically, at the time of the search, the District had a two-page policy and five pages of guidelines governing the search and seizure of students. The policy and guidelines were available for public view and were part of the student handbook and administrators handbook. Teachers received copies of the policy and guidelines, and the District instructed teachers to review the requirements of the guidelines. The District does not refer this court to any formal training session pertaining to this particular policy.

The two-page written "SEARCH AND SEIZURE" policy stated that it governed the search of school property, such as desks and lockers; and the search and seizure of "Student Person and Possessions." JA 103-104. With respect to searches of students, the policy noted that the "Board [of Education] recognizes that the privacy of students or his/her belongings may not be violated by unreasonable search or seizure and directs that no student be searched without reasonable suspicion or in an unreasonable manner." JA 103. The policy adopted a balancing test, noting that the "extent of the search will be governed by the seriousness of the alleged infraction, the student's age, and the student's disciplinary history." JA 103.

The policy also outlined procedures for searching students. The guidelines noted, "a request for the search of a student or a student's possessions will be directed to the principal." JA 104. The person conducting the search "shall attempt to obtain the freely-offered consent of the student." *Id.* However, where there is reasonable suspicion, school authorities "may conduct the search without such consent." *Id.* "Whenever possible, a search will be conducted by the principal in the presence

No. 06-1452
*Beard v. Whitmore Lake School*

of the student and a staff member other than the principal." *Id.* Finally, a "search of a student's person or intimate personal belongings shall be conducted by a person of the student's gender, in the presence of another staff member of the same gender, and only in the exceptional circumstances when health or safety of the student or of others is immediately threatened." *Id.*

The five pages of guidelines expanded on the policy. It noted, for example, that "[a]ll requests or suggestions for the search of a student or his/her possessions shall be directed to the principal or the person in charge of the students while [the principal is] out of the District," and defined "reasonable suspicion for a search" as "ground sufficient to cause an adult of normal intellect to believe that the search of a particular person, place, or thing will lead to the discovery of evidence that the student: ... (B) has violated or is violating a particular law." JA 106. Finally, the guidelines listed "[a]uthorized searches," including "(A) the student's pockets; (b) purses, briefcases, or any other object in the possession of the student; (c) a 'pat down' of the exterior of the student's clothing and the removal of any item identified; [and] (d) removal of an article of exterior clothing such as a jacket." JA 107. The guidelines, however, made clear that "[s]trip searches are to be conducted only by law enforcement personnel." *Id.*

Evidence also shows that school officials were not familiar with or trained in the policies. Munz testified, for example, that he did not receive training in the searching of students or their belongings from the time the District hired him in 1996 to May 24, 2000. JA 53 (Q: "In other words, from '96 to . . . May 24th, 2000 was there any training on the Board of Education's policy about searches of students and/or their property?" A: "No."). Superintendent Bachman, meanwhile,

testified that he was unaware of any training efforts that the district made to inform administrators or teachers about the constitutional rights that the policy and guideline protected. In fact, Bachman noted that training on searching students was not on "anyone's top ten list as far as professional development or training." JA 68. Finally, Munz testified that, had he received training on the policy, he would not have performed the search.

There is also evidence of search incidents prior to the May 24, 2000, search. On January 6, 2000, Principal Nelson and Carpenter responded to a student complaint of a missing wallet by searching student backpacks and pockets. A letter to parents explained that "[a]t the end of [a physical education] class period when students were changing clothes, a wallet containing pictures and a considerable amount of money was reported missing." JA 110. The teacher responded by searching "[a]ll student backpacks and pockets." JA 110. The letter "commend[ed] the students for their cooperation and patience," and noted that the "teacher was able to recover the wallet intact and an investigation is now underway with definite consequences to follow." JA 110. After the May 24, 2000, search, Carptenter described how he thought the May 24, 2000, search "was the way it [searches of students] was done before." JA 111.

On September 13, 2002, eight students from the May 24, 2000, search filed an amended complaint against the District, Acting Principal Balsillie, Carpenter, Munz, Lemons, and Langen. They alleged a violation of the students' Fourth Amendment and due process rights. (The students' claims against Northfield Township Police Officers R. Mayrand and M. Jensen, *see* Order of July 11, 2006, and the teachers and administrators in their individual capacities are not before this court.)

*No. 06-1452*
*Beard v. Whitmore Lake School*

On June 20, 2003, the district court granted the District's motion for summary judgment noting that the January 6, 2000, incident failed as a matter of law to establish a pattern or practice of tolerating unconstitutional behavior and finding that the District did not fail to train its teachers adequately. The case against the District did not come before this court immediately on appeal because the district court denied a motion for summary judgment as to the individuals named in the complaint. In an interlocutory appeal from the district court's denial of the individual defendants' motion for summary judgment, this court reversed the district court. *Beard*, 402 F.3d at 603-04. On March 15, 2006, the district court entered a final order dismissing the case in its entirety, from which the students appeal.

The issues on appeal are narrow; they are whether there is a genuine issue of material fact regarding: (1) whether the District sufficiently trained its teachers on the policies of searching students and (2) whether it had a custom of tolerating unconstitutional searches. The District does not dispute that the May 24, 2000, search violated its official policy on searching students, and this court previously held that the "searches performed on the students in this case were unconstitutional." *Id.* at 602.

**ANALYSIS**

**I.     STANDARD OF REVIEW**

This court reviews a district court's decision to grant summary judgment under a de novo standard. *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir. 1999). Summary judgment is

No. 06-1452
*Beard v. Whitmore Lake School*

appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448 (6th Cir. 2002); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A school district can be liable under § 1983 if its own policies or customs infringed upon the "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In this case, plaintiffs alleged that the District's policy of inadequately training teachers infringed upon the students' rights. Before a school district can be held liable for inadequate training, a plaintiff must show that (1) the district's training was inadequate for the tasks that the employees performed, (2) the inadequacy was the result of deliberate indifference, and (3) the inadequacy was "closely related to" or "actually caused" the injury at issue. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir 1992). The deliberate indifference standard is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (quoting *Brown*, 520 U.S. 397 (1997)). Finally, there must be a "direct causal link between the [district's] policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

*No. 06-1452*
*Beard v. Whitmore Lake School*

## II. PLAINTIFFS FAILED TO SHOW THAT THE DISTRICT WAS DELIBERATELY INDIFFERENT TO THE STUDENTS' RIGHTS OR THAT THE DISTRICT HAD A PATTERN OR PRACTICE OF VIOLATING CONSTITUTIONAL RIGHTS

Because no reasonable jury could find that the District was deliberately indifferent to students' interests in being free from unreasonable searches and seizures, this case does not fall within the "limited circumstances in which an allegation of a 'failure to train' can be the basis of liability under § 1983." *City of Canton*, 489 U.S. at 387. The students have not shown that the District was deliberately indifferent in the sense that it did not train teachers adequately to address an obvious need.

The students have not shown that it was obvious that the District needed to provide additional training on the students' Fourth Amendment rights. *See generally Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690, 700-01 (6th Cir. 2006) (citing *City of Canton*, 489 U.S. at 390 n.10). In *City of Canton*, the United States Supreme Court explained that, in some circumstances, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers of the city can reasonably be said to have been deliberately indifferent to the need" if those policymakers do not provide the "obvious" training. 489 U.S. at 390. Here, in contrast, the need for additional training was not "so obvious" to establish the District's deliberate indifference for several reasons.

First, it is not inherently foreseeable that teachers would have ignored the District's policy and guidelines and engaged in an excessive and unconstitutional search. The District, as discussed

No. 06-1452
*Beard v. Whitmore Lake School*

above, provided teachers with the relevant policies and guidelines and could reasonably expect them to review the policies. As the United States Court of Appeals for the Eighth Circuit recently explained, a school district is not liable if its employees "simply chose to disregard [its] handbook and all common sense." *P.H. v. Sch. Dist. of Kansas City, Missouri*, 265 F.3d 653, 661 (8th Cir. 2001). That is what happened here. The teachers disregarded the District's written policies and engaged in a search that this court has found to have been unconstitutional.

Second, while the need to have some policy on unconstitutional searches might be obvious, the need to have a training program above and beyond the policy is not obvious in this case. Clearly, the District recognized that there was a risk that teachers might engage in unconstitutional searches and that having a policy was an appropriate course of action. The risk that unconstitutional searches might occur, however, is distinct from the risk that unconstitutional searches might occur despite the existence of the District's policy limiting such searches. The students blur the line between the two risks when they argue that the District's policies demonstrate there was an obvious risk of unconstitutional searches.

Third, and relatedly, the District's decision not to give a higher priority to search training is consistent with the District's position that the need for additional training was not obvious. In their briefs, the students criticize Bachman's statement that training on searches and seizures "wouldn't be on . . . anyone's top ten list as far as professional development or training," JA 68, and suggest that the District had a policy of not training teachers on this important subject. Bachman's statement,

*No. 06-1452*
*Beard v. Whitmore Lake School*

however, is fully consistent with the absence of an obvious risk that teachers would violate the District's policy and guidelines.

Fourth, the students did not present evidence that teachers routinely encountered situations in which the teachers might have engaged in unconstitutional searches of students without proper training. Because the probability that teachers would have to search students was low (according to the policy at issue in this case, it was the principal's responsibility to initiate searches, not the teachers'), the District did not train its teachers to handle such a contingency. In this case, the students can only cite two instances in which teachers engaged in *any* searches of students (whether constitutional or unconstitutional), suggesting that teachers in the District do not regularly search students as part of their day-to-day job responsibilities.[1]

Fifth, this court previously found that the "law, at the time the searches were conducted, did not clearly establish that the searches were unreasonable under the particular circumstances present in this case." *Beard*, 402 F.3d at 606. Given that it was not clear at the time that the search at issue in this case was unconstitutional, it is unlikely that the need for training to prevent the

---

[1] *Vernonia School District v. Acton*, 515 U.S. 646, 648-50 (1995), and *Board of Education of Independent School District 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 837-38 (2002), do not support the students' argument that "the changing social landscape" requires teachers to conduct searches on a "day-to-day" basis. In relying on *Vernonia* and *Earls* (where the United States Supreme Court upheld the use of random drug testing programs in certain circumstances), the students conflate a school district's need to test students for illegal substances with teachers' day-to-day responsibilities to respond to allegations of theft by strip searching students despite a District policy prohibiting such conduct.

*No. 06-1452*
*Beard v. Whitmore Lake School*

unconstitutional search was "so obvious" that the District was deliberately indifferent to the need to prevent the search. *Cf. City of Canton*, 489 U.S. at 390.

Finally, it is important not to conflate our *ex post* view of the District's policy from the District's *ex ante* decision not to engage in additional training. Viewed *ex post*, the District's decision not to engage in additional training might have been a poor one in light of the illegal search that resulted from the failure to train. Our analysis, however, must be *ex ante*. The District has numerous policies and guidelines and it would be impossible to provide sufficient training to cover every possible contingency; a decision to have training on one issue might inevitably lead to insufficient training on another. The Supreme Court in *City of Canton* only required districts to focus on "obvious" risks; it did not require them to account for every possible risk.

The students are also unable to show that the District failed to act in response to "repeated complaints of constitutional violations by its officers." *Ellis*, 455 F.3d at 701 (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). The students seek to establish a pattern of unconstitutional searches by pointing to a January 6, 2000, incident in which District officials searched student's backpacks and pockets. The district court was correct to conclude as a matter of law that the January 6, 2000, incident does not establish a pattern.

First, the January incident occurred several months before the May incident and did not rise to the same level of abuse. *See Ellis*, 455 F.3d at 701 (comparing levels of abuse). Clearly the strip search in May involved privacy interests far greater than those raised in the January search of

No. 06-1452
*Beard v. Whitmore Lake School*

backpacks and pockets. *New Jersey v. T.L.O.*, 469 U.S. 325, 342 n.8 (1985). As a result, the January 6, 2000, incident does not establish a pattern of unconstitutional searches of a higher magnitude.[2]

Second, even if the prior incidents had been of the same magnitude, one incident in the previous several months does not establish a pattern. In *Ellis*, this court held that two incidents over a two-year period involving 127 schools did not put a District on notice of a widespread policy. 445 F.3d at 701. While the time period in this case was shorter (five months versus two years) and the prior incident occurred in the same school as opposed to an entire District, the previous incident in this case does not as a matter of law establish a pattern because a plaintiff must show a considerably widespread pattern, which did not occur here. *See S.J. v. Kansas City Missouri Pub. Sch. Dist.*, 294 F.3d 1025, 1028 (8th Cir. 2002).

Third, Carpenter's subjective understanding that "I thought this was the way it was done before," JA 111, is insufficient as a matter of law to establish a pattern or practice of unconstitutional behavior. A teacher's mistaken belief that the District adopted a policy of tolerating unconstitutional searches does not show that the District deliberately adopted such a policy, notwithstanding the students' conclusory and disconnected statement that the District "taught" its teachers to engage in unconstitutional searches by tolerating a search of a lesser magnitude.[3]

---

[2] We do not reach the constitutionality of the January 6, 2000, search or the allegations that the District tolerated dog searches. Neither issue is directly before this court.

[3] Because the January incident is distinct from the search at issue in this case, the students' claim that the District had a custom of unconstitutional searches must likewise fail. *Cf. Brandon v. Holt*, 469 U.S. 464 (1985). Two incidents of unconstitutional searches over the course of five

No. 06-1452
*Beard v. Whitmore Lake School*

The United States Court of Appeals for the Eleventh Circuit's opinion in *Thomas v. Roberts* supports the conclusion that the District is not liable. 261 F.3d 1160 (11th Cir. 2001). As in this case, school officials in *Thomas* engaged in an unconstitutional strip search of students after a student reported that his money was missing. *Id.* at 1162-63. As in this case, the District had a policy permitting searches based on reasonable suspicion. *Id.* at 1172. In finding no municipal liability, the court in *Thomas* noted that the "students have failed to present sufficient evidence to demonstrate either that the District's employees faced clear questions of Fourth Amendment law on a recurring basis or that there was a pattern of unconstitutional searches and seizures perpetrated by school administrators of which the District was, or should have been, aware." *Id.* at 1173. As in this case, there was no evidence of a similar instance of this magnitude which made the need for training obvious. *Id.* at 1174.

Finally, it is worth mentioning that the United States Supreme Court has rejected a series of arguments that the students raise tangentially in their briefs. The students, for example, suggest that the injury that they suffered would not have occurred had teachers received sufficient instruction. This evidence is insufficient as a matter of law. The Court in *City of Canton* noted, "Neither will it suffice to prove that an injury . . . could have been avoided if an officer had had better or more training, sufficient to equip him [or her] to avoid the particular injury-causing conduct." 489 U.S. at 391. The Supreme Court explained that "Such a claim could be made about almost any encounter

---

months does not demonstrate behavior "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.

- 13 -

No. 06-1452
*Beard v. Whitmore Lake School*

resulting in injury." *Id.* Along similar lines, the students mention that certain teachers admitted that they did not receive adequate training. The Court in *City of Canton* noted, "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* See also *Stemler*, 126 F.3d at 865 (an officer's lack of familiarity with department policy manuals is insufficient). Finally, to the extent that the students ask this court to hold the District liable under a theory of *respondeat superior*, the Supreme Court explicitly rejected such an approach in *City of Canton.* 489 U.S. at 392.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

LEONARD GREEN
CLERK

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

ROY G. FORD
(513) 564-7016
(FAX) 564-7096
www.ca6.uscourts.gov

Filed: June 19, 2007

David J. Weaver, Clerk

RE: 06-1452
Beard vs. Whitmore Lake School
District Court No. 00-73657

Dear Clerk:

Enclosed is a copy of an order which was entered today in the above-styled case.

Very truly yours,
Leonard Green, Clerk

Roy G. Ford
Case Manager

Enclosure

cc: Honorable Paul D. Borman
Mr. Matthew E. Krichbaum
Mr. Michael J. Steinberg
Mr. Timothy J. Mullins